### UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LORING ROCKE and MICHAEL CINO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.: 08 CV 3828 |
| v. | ) | |
| | ) | Honorable Ronald A. Guzman |
| T-MOBILE USA, INC. and YOUNG AMERICA | ) | |
| CORPORATION, | ) | Magistrate Judge Martin C. Ashman |
| | ) | |
| Defendants. | ) | |

### T-MOBILE USA, INC.'S MEMORANDUM IN SUPPORT OF
### MOTION TO DISMISS AND TO STRIKE

The Complaint in this case is fundamentally flawed.  The reasons include that:

- **The Named Plaintiffs' claims are time-barred.**  The Complaint purports to state a consumer class action based on the named plaintiffs not receiving cell phone rebates for phones purchased on or before January 11, 2005; however, the limitations period for bringing such a case pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (the "Consumer Fraud Act") is three years and this case was filed July 3, 2005, in violation of the limitations period;

- **The Named Plaintiffs otherwise fail to plead their claims with the specificity required by Fed. R. Civ. P. 9(b).**  The Complaint purports to state a fraud action, subject to the heightened pleading requirements of Rule 9(b); however, none of the requisites of fraud are alleged as to the Named Plaintiffs;

- **The Class Definition fails as a matter of law.**  Federal jurisdiction is based on the Class Action Fairness Act, 28 U.S.C. § 1332(d); however, on its face the putative class cannot be certified, as it includes only those "improperly" denied rebates, requiring individual findings to determine class membership based on whether a particular rebate was denied properly or "improperly"; and

- **The Complaint is Replete With Immaterial and Impertinent Allegations.**  Much of the Complaint concerns the adequacy of pre-paid credit cards as substitutes for rebate checks, though neither Named Plaintiff is alleged to have received such a card and so lacks standing to make any claim about them.

These flaws thoroughly infect the case at the outset and, as a matter of law, this case cannot be sustained as a result. Accordingly, as discussed below, T-Mobile USA, Inc. ("T-Mobile") moves to dismiss the Complaint, or alternatively to strike the improper allegations in it, including the jurisdictional allegations purporting to make out a class and those making claims about pre-paid credit cards that have no bearing on either the Named Plaintiffs' or the class allegations.

## THE NAMED PLAINTIFFS' ALLEGATIONS

Motions to dismiss must accept, for the purposes of argument, the allegations of the Complaint. As to the Named Plaintiffs, those allegations are particularly sparse here. Thus, the Complaint's allegations about Mr. Rocke appear in two sentences in a single paragraph. Complaint ¶ 12. In their entirety, these allegations are as follows:

> "As to Plaintiff Loring Rocke, he purchased a rebate-eligible T-Mobile cellular phone and service plan based on T-Mobile's misleading rebate program (See Ex. E attached). After numerous attempts, he never received his promised $50 rebate."

The exhibit referred to in these allegations consists of the January 11, 2005 sales receipt for Mr. Rocke's cellular phone. Complaint, Ex. E.

The Complaint's allegations concerning Mr. Cino are entirely contained in the same paragraph as those concerning Mr. Rocke. In their entirety, they are:

> "Plaintiff Michael Cino was also deceived into purchasing a rebate-eligible T-Mobile cellular phone and service plan. His rebate was declined after an alleged "activation" problem (See Ex. F attached). After numerous failed attempts to obtain his promised rebate, he filed a complaint with the Illinois Attorney General's Consumer Protection Division. As a direct result of this complaint, T-Mobile credited Mr. Cino's T-Mobile account for just over $50 (See Ex. G attached). He never received an actual rebate in the manner promised by the company."

*Id.*  The first exhibit referred to in these allegations is a letter dated April 19, 2004 and addressed to Mr. Cino.  Complaint, Ex. F.  The letter post-dates Mr. Cino's telephone purchase and relays that his earlier rebate request is refused because "[t]his promotion requires a new activation on your Motorola V300 between 02/1/04 and 06/30/04."  *Id.*  The other exhibit referred to evidences that, notwithstanding its disagreement with Mr. Cino's claim, T-Mobile credited Mr. Cino's $50.89, an amount in excess of the $50 rebate offer.

Other than these allegations, and an allegation as to each man's address, the Complaint is completely silent as to both Named Plaintiffs.  There is no allegation about when or where anyone said anything to either of them that was fraudulent or what that statement might be.  There is no allegation specifying when or where either of the Named Plaintiffs read anything fraudulent or what that might be.  Neither is any causal link pleaded between the unspecified "fraudulent" statements and any actual harm that either of the Named Plaintiffs suffered.

Notwithstanding this lack of alleged fraud experienced by either Mr. Rocke or Mr. Cino, relying on the Illinois Consumer Fraud Act, and on derivative claims of unjust enrichment, these men seek to represent a so-called "fail-safe" class.  That class is not defined in terms of any fraud.  Rather, the putative class is defined as:

> "All consumers in Illinois who were *improperly* denied rebates by T-Mobile and Young America who were eligible for and participated in the REBATE PROGRAM after July 3, 2005 resulting in costs in excess of the discounted price they would have ultimately paid for their cellular phones and service had they received the rebate as promised from T-Mobile and Young America."

Complaint, ¶ 26 (emphasis added).

The Complaint does include, and in fact is largely comprised, of allegations unrelated to the alleged experiences of the Named Plaintiffs and also unrelated to the putative class.  In

particular, much of the Complaint consists of generic claims about the adequacy of pre-paid credit cards as a substitute for rebate checks. *See* Complaint, ¶¶ 2, 3, 4, 5, 7, 23 and 35. This focus on pre-paid credit cards is despite the fact that it is *not* alleged that either Mr. Rocke or Mr. Cino ever received such a card. To the contrary, Mr. Rocke claims never to have received a rebate in any form after his January 11, 2005 purchase and Mr. Cino alleges that he received a credit to his account, not a pre-paid credit card. Likewise, no reference to pre-paid credit cards is incorporated into the putative class definition.

T-Mobile makes its motion in the context of these allegations.

## **ARGUMENT**

On its face, the Complaint in this case cannot be sustained and is, accordingly, properly dismissed pursuant to Fed. R. Civ. P. 12(b). *See Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.,* 179 F.3d 523 (7th Cir. 1999) (affirming dismissal of complaint based on allegations in, and exhibits to, complaint); *see also Karpowicz v. General Motors Corp.*, No. 97 C 1390, 1997 WL 285943 at *3 (N.D. Ill. May 23, 1997) (dismissing consumer fraud complaint based on allegations and "documents attached to the pleadings as exhibits [that] are considered part of the pleadings for all purposes"). The failure of Messrs. Rocke and Cino's claims is especially stark given that they purport to state fraud claims, which are subject to Fed. R. Civ. P. 9(b) and the obligation to plead the specific facts that demonstrate the "who, what, when, where and how" of the alleged "fraud." *See DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990). Moreover, what is true as to Messrs. Rocke and Cino's individual claims is also true for their putative class claims. *See Towers v. City of Chicago,* 173 F.3d 619, 623 (7th Cir. 1999) (affirming dismissal of putative class action complaint where named plaintiffs failed to state a

claim); *Portwood v. Ford Motor Co.*, 183 Ill.2d 459, 467 fn. 1 (1998) ("[T]he failure of plaintiffs' individuals claim necessarily defeats their class claims as well.").

There is no viable claim alleged in this case – and what is alleged is largely immaterial to either Messrs. Rocke and Cino or their improperly defined putative class.[1]

### A.     Messrs. Rocke and Cino's Claims Are Time-Barred

The most obvious reason the Complaint in this case should be dismissed is that Messrs. Rocke and Cino's own Consumer Fraud Act claims are time-barred. *See Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 670 n. 14 (7th Cir. 1998) ("when 'the face of the complaint affirmatively indicates that the time limit for bringing the claim has passed, the plaintiff may not escape the statute of limitations by saying nothing.'"); *Thomas v. CitiMortgage, Inc.*, No. 03 C 6177, 2004 WL 1630779, at *2 (N.D. Ill. Jul. 16, 2004) (dismissing Consumer Fraud Act claim under 12(b)(6) as time-barred); *Karpowicz*, 1997 WL 285943 at *4-5 (same).

An action for damages under the Consumer Fraud Act must be brought within three years after the plaintiff knows or reasonably should know of his injury. 815 ILCS 505/10a(e); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994); *Native American Arts, Inc. v. Chrysalis Institute, Inc.*, at *2 No. 01 C 5714, 2002 WL 441476 (N.D. Ill. Mar. 21, 2002)

---

[1]     Like its other customers, Messrs. Rocke and Cino agreed to certain Terms and Conditions when they signed up for service from T-Mobile. Those Terms and Conditions include an agreement to arbitrate disputes such as this one. T-Mobile agreed to pay almost all of the costs of such arbitration. The Seventh Circuit has expressly enforced such agreements. *See Livingston, et al. v. Associates Finance, Inc.*, 339 F.3d 553, 559 (7th Cir. 2003) (reversing class certification and enforcing arbitration clause that included a class action waiver). The Seventh Circuit has further held that the filing of a motion to dismiss does not waive that right. *Sharif v. Wellness Intern. Network, Ltd*, 376 F.3d 720, 726 (7th Cir. 2004) (observing that "it is well established that a party does not waive its right to arbitrate merely by filing a motion to dismiss"); *see also Halim v. Great Gatsby's Auction Gallery*, 516 F.3d 557, 562 (7th Cir. 2008) ("This Court has explicitly held that simply moving to dismiss a case does not waive one's right to arbitrate."). T-Mobile reserves its right to enforce the parties' arbitration agreement here.

("For purposes of [505/10a], accrual occurs where a plaintiff knows or reasonably should know of the existence of the cause of action."). This is acknowledged in Messrs. Rocke and Cino's own class definition, *i.e.*, that as a matter of law, no individual <u>*could*</u> participate in this case unless he or she was "eligible for and participated in the REBATE PROGRAM after July 3, 2005." Complaint, ¶ 26. Messrs. Rocke and Cino are not themselves within this class.

In Mr. Cino's case, Exhibit F to the Complaint establishes that his rebate was denied in April 2004, well over a year before the statute of limitations barred his claim in this case. *See, e.g.*, *Fitzgerald v. Chrysler Corp.* (N.D. Ill. Aug. 16, 1996), 1996 WL 473456, at *8 (dismissing Consumer Fraud Act claim based on statute of limitations; concluding that the limitations period began to run from the denial of benefits claimed under service contract).

Similarly, Exhibit E to the Complaint demonstrates that Mr. Rocke bought his phone in January 2005, three-and-a-half years prior to the filing of the Complaint. Mr. Rocke was then obligated to submit his rebate application by the end of the following month, February 2005. *See* Rebate Form, Exhibit B to the Complaint (providing that rebate forms for phones purchased and activated in one month (*e.g.*, June 2008) must be post-marked by the end of the following month (in that exhibit, July 2008)). Assuming he complied with this term of the rebate program, a fact not alleged, Mr. Rocke would have been mailed his rebate within eight weeks. Complaint, Ex. B (rebate "will be mailed within 8 weeks from the time your valid rebate card request is received"). Thus, by no later than April 2005, still well over three years before the Complaint in this case was filed, if he complied with the terms of the rebate offer, Mr. Rocke would either have received his rebate or else was aware that he should have, but had not. As noted above, the Seventh Circuit has held that, in these circumstances, Mr. Rocke cannot "escape the statute of

limitations by saying nothing." *Kauthar SDN BHD,* 149 F.3d at 670 n. 14.  Like Mr. Cino, Mr.

Rocke's claim, based on his January 2005 cell phone purchase is time-barred.

This analysis requires dismissal of Messrs. Rocke and Cino's derivative unjust

enrichment claim, too.  That is because unjust enrichment "claims" have no independent basis

under Illinois law.  This was recently emphasized by the Illinois Appellate Court in *Mulligan v.*

*QVC*, a 2008 case in which the court granted summary judgment on the plaintiff's unjust

enrichment claim upon finding judgment appropriate on her Consumer Fraud Act claim.  382

Ill.App.3d 620, 888 N.E.2d 1190, 1196 (Ill. App. Ct. 2008).  The Court held that, under Illinois

law, unjust enrichment is not an independent cause of action, but is instead a condition that, if

brought about by unlawful conduct, such as fraud, may be redressed by a cause of action based

upon that improper conduct—*i.e.*, an action for fraud.  *See id.*  Thus, where as here a plaintiff's

Consumer Fraud Act claim fails as a matter of law, so too does his or her derivative (and

dependent) claim based on "unjust enrichment."

The fact that the Complaint in this case is based on the time-barred claims of both named

plaintiffs supports dismissal of Messrs. Rocke and Cino's claims with prejudice.  *See Mitchell v.*

*Collagen Corp.*, 67 F.3d 1268, 1273-74 (7th Cir. 1995) (leave to amend properly denied where

complaint affirmatively demonstrated plaintiff's claims were barred by the statute of limitations)

*rev'd on other grounds,* 518 U.S. 1030 (1996).

**B.    Messrs. Rocke and Cino Otherwise Fail to State a Fraud Claim Consistent**
**with Rule 9(b)**

Even if not time-barred, Messrs. Rocke and Cino's allegations do not satisfy the

heightened pleading requirements imposed on fraud-based claims like those they purport to

make.  In this regard, Fed. R. Civ. P. 9(b) requires that fraud-based claims, including those under

the Consumer Fraud Act, be pleaded with specificity.  *See Davis v. G.N. Mortgage Corp.*, 396

F.3d 869, 883 (7th Cir. 2005); *United States v. All Meat and Poultry Products Stored at Lagrou Cold Storage*, 470 F.Supp.2d 823, 830 (N.D. Ill. 2007); *cf. Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (Ill. 1996) ("[A] complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud.").[2]

At a bare minimum, this heightened pleading standards required Messrs. Rocke and Cino to have alleged the particular fraudulent statement or statements made to them; the identity of the individual or the individual who made it (or the advertisement in which it was contained); the date the statement was made; where it was made; who heard it; the specific damages suffered because of the specific fraudulent statement; and the causal link between those damages and the purportedly fraudulent statement.  *See DiLeo*, 901 F.2d at 627 (explaining  pleading requirements required by Fed. R. Civ. P. 9(b)); *Lagrou Cold Storage*, 470 F.Supp.2d at 830-31 (same).

Furthermore, Illinois cases construing the Illinois Consumer Fraud Act in the case of private claims require that, to state an individual claim under the Consumer Fraud Act, a plaintiff must plead that the identified false statement caused him to enter into the transaction in question (known as "transaction causation") and that the statement was the reason that plaintiff suffered the injury complained of (known as "loss causation").  *See, e.g., Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 60-69 (1994).[3]

---

[2]      The same is true with respect to the derivative claim of unjust enrichment when, as here, it is premised on allegations of fraud.  *See Pace Am., Inc. v. Elixir Indus.*, No. 06 C 4661, 2007 WL 495302, at *2 n. 3 (N.D. Ill. Feb. 13, 2007).

[3]      "To establish a claim under the Consumer Fraud Act, plaintiff must show that (1) defendant committed a deceptive act or practice; (2) defendant intended for plaintiff to rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; (4) plaintiff suffered actual damages; and (5) plaintiff's damages were proximately caused by the defendant's deceptive conduct."  *DOD Tech. v. Mesirow Ins. Serv., Inc.,* 381 Ill.App.3d 1042, 1050-51 (1st Dist. 2008).

Messrs. Rocke and Cino make no attempt to satisfy these pleading standards in the single paragraph of the Complaint that describes their claims. *See* Complaint, ¶ 12. Neither identifies an allegedly fraudulent statement or representation upon which he relied. Neither alleges when or where he heard or saw any such statement, or who authored it, or how it influenced his decision to acquire a T-Mobile phone and service plan, to the extent it did. Neither Mr. Rocke nor Mr. Cino alleges facts demonstrating "loss causation"—that is, neither describes how any allegedly fraudulent statement caused him injury, as opposed to some other cause, like failure to meet the eligibility requirements for the rebate they are seeking or failure to comply with the instructions for redeeming the rebate. Instead, Messrs. Rocke and Cino allege generically that, sometime on or prior to January 11, 2005, each bought a T-Mobile phone. In Mr. Rocke's case, he says he never received a rebate on that phone. In Mr. Cino's case, he says he only received a credit to his account (slightly in excess of the rebate amount) some time later. This failure to meet the pleading requirements of Rule 9(b) provides an additional, independent basis why Messrs. Rocke and Cino fail to state a

claim, either for themselves individually or, accordingly, for any putative class.[4]

## C.     The Putative Class is Improper as a Matter of Law

In addition to the failure of their individual claims, Messrs. Rocke and Cino's class allegations are improper as a matter of law, demonstrating the impossibility of this case

---

[4]     Mr. Cino's allegation that his account was credited an amount in excess of the promised rebate is of special significance in light of the fact that "it is well settled that in order to maintain a private cause of action under the Consumer Fraud Act, a plaintiff must prove that she suffered actual damage as a result of a violation of the Act." *See Mulligan*, 382 Ill. App. 3d 620, 88 N.E.2d at 1196. Where pleaded fact demonstrate absence of injury, a Consumer Fraud Act claim is subject to dismissal. *See id.* at 1197-99; *Hackman v. Dickerson Realtors, Inc.*, 557 F. Supp. 2d 938, 953 (N.D. Ill. 2008) (dismissing claim when alleged facts demonstrated the lack of injury); *cf. Dwyer v. American Express Co.*, 273 Ill. App. 3d 742, 750 (Ill. App. Ct. 1995) (affirming dismissal where complaint "failed to allege facts that might establish that [plaintiffs] suffered any damages.").

proceeding as a class action.  In cases where putative class allegations are infirm on the face of a complaint, courts have and do strike class allegations at the pleading stage, pursuant to Fed. R. Civ. P. 23(c) or 23(d)((1)((D).  *See Miller v. Motorola, Inc.*, 76 F.R.D. 516, 518 (N.D. Ill. 1977) (granting motion to strike class allegations pursuant Rule 23(c)); *Aguilar v. Allstate Fire and Cas. Ins. Co.*, 2007 WL 734809 at *2 (E.D. La. Mar. 6, 2007) (striking infirm class allegations on the pleadings, relying upon *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982).[5]  As in *Miller* and *Aguilar*, here the infirmity of Messrs. Rocke and Cino's class allegations is obvious from the Complaint.  Moreover, unlike in *Miller*, here the class allegations have jurisdictional import, as Messrs. Rocke and Cino rely on the Class Action Fairness Act, 28 U.S.C. § 1332(d), to support federal jurisdiction.  Complaint ¶ 20.

Specifically, Messrs. Rocke and Cino's proposed class definition depends – and necessarily depends – on whether an individual putative class member was "*improperly* denied" a cell phone rebate.  Complaint, ¶ 26.  This definition (correctly) recognizes that rebates may also be "*properly* denied."  Thus, determination of class membership does not, and cannot, depend on simple application of objective criterion.  Rather, class membership depends, under the alleged definition, on the facts, circumstances and legal factors that render a particular rebate denial "proper" or "improper."  This requires a factual and legal hearing on the circumstances and propriety of the rebate decision as to each putative class member.

A class definition that requires proposed class members to demonstrate they have a meritorious claim against the defendant to be included in the class is known as a "fail-safe" class. 1 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS § 4:2 (Rule 23 requires that

---

[5]       *Aguilar* relies on language now contained at Rule 23(d)(1)(D), which authorizes courts to "issue orders that require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."

plaintiffs "define and establish the existence of an aggrieved class that is ascertainable by reference to objective criteria without resort to numerous individualized, fact-intensive questions."). The leading cases explaining the infirmities inherent in a fail-safe class are *Daffron v. Rousseau Assoc., Inc.*, 1976-2 Trade Cases ¶ 61,219, 1976 WL 1358, at *1-2 (N.D. Ind. July 27, 1976) and *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398 (Tex. 2000).

In *Daffron*, the court faced an antitrust action where plaintiffs sought to certify a class of all homeowners who sold their property using the services of a real estate broker, but only to the extent the homeowners were charged "an artificially fixed and illegal brokerage fee" by their real estate broker. 1976 WL 1358, at *1. The court rejected the proposed definition as untenable since class members could not be readily identified and notified at the outset of the case, as required by Rule 23. *See id.* at *2. Moreover, by limiting the class to those individuals who had a claim against the defendants, the plaintiffs had created a "fail-safe" class whose members would only exist and be bound if there was a favorable judgment:

> Since the proposed class would consist only of those homeowners who paid illegal fees, a jury determination that defendants have charged no such illegal fees would at the same time determine that there was no class. Absent class members would thereupon be free to relitigate the legality of defendants' fee structures. But Rule 23 was never meant to be an exception to the rules of res judicata or to provide a risk-free method of litigation. The class definition must be such that all (except those who opt out) are as much bound by an adverse judgment as by a favorable one.

*Id.*; *see also Intratex Gas Co.*, 22 S.W.3d at 403-05 (Tex. 2000) (applying similar reasoning; surveying and relying upon federal class action cases).

Courts in the Seventh Circuit have consistently followed *Daffron* by rejecting classes whose definition depends on a determination that the class members, in fact, have claims. *See Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (rejecting class of children with learning

disabilities "'who are not properly identified and/or who are not receiving' special education");

*Bledsoe v. Combs*, No. NA 99-153-C H/G, 2000 WL 681094, at \*4 (S.D. Ind. 2000) (rejecting

class of certain misdemeanor detainees who were strip-searched without "reasonable cause to

believe they were carrying concealed weapons or contraband"); *Indiana State Employees Ass'n.*

*v. Indiana State Highway Comm'n*, 78 F.R.D. 724, 725 (S.D. Ind. 1978) (rejecting class of

individuals who were refused employment or who suffered harassment on the job "due to their

failure to regularly pay two percent (2%) of their net wages" to the political party in control of

their place of employment).

Messrs. Rocke and Cino's proposed class in this case has the same common flaw as these

other, rejected classes:  that is, they present a "fail-safe" class that requires an individualized

finding concerning the propriety of each potential member's rebate denial in order to determine

its membership.  The class definition is further flawed as it makes no effort to limit the class to

those who were exposed to, or whose damages were caused by, any allegedly "fraudulent"

statement.  In fact, Messrs. Rocke and Cino's proposed class definition is so flawed that, even if

they had otherwise stated a claim, it would be properly stricken, critically undermining their

jurisdictional allegations.

### D.    The Complaint's Allegations Concerning Pre-Paid Credit Cards Have No Place in this Case

While failing to plead the basic requisites of a fraud claim, Messrs. Rocke and Cino

spend an inordinate amount of the Complaint making allegations about the inadequacy as a

substitute for a rebate check of pre-paid credit cards.  As previously noted, however, neither Mr.

Rocke nor Mr. Cino is alleged to have received one of these cards.  Were the Complaint not

otherwise subject to dismissal, these allegations, contained in paragraphs 2, 3, 4, 5, 7, 23 and 35

of the Complaint should be stricken.  The same is true of Messrs. Rocke and Cino's allegations,

12

based on an article that never mentions T-Mobile, about the percentage of consumers eligible for rebates who never seek to redeem them.  *Id.* ¶¶ 10 & 23, Ex. C.  These allegations have nothing to do with the claims that Plaintiffs are attempting to pursue against T-Mobile (or Young America) and should be stricken.

Rule 12(f) authorizes district courts to strike immaterial matter from a complaint—that is, allegations that have "no relationship to the cause of action pled."  *Doe v. Brimfield Grade School*, 552 F.Supp.2d 816, 825 (C. D. Ill. 2008).  In resolving motions to strike, trial courts are empowered with broad discretion.  *See Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992) (affirming grant of motion to strike).  Courts are particularly apt to act when keeping the challenged material would lead to unnecessary and burdensome discovery that could impede the progress of pretrial proceedings.  *See Brimfield Grade School*, 552 F.Supp.2d at 825; *Hasse Const. Co., Inc. v. Gary Sanitary Dist. Bd. of Com'rs*, No. 2:06-CV-322-PRC, 2008 WL 2169000 at *7 (N.D. Ind. May 23, 2008) (striking unwarranted claim for punitive damages since its continued inclusion "would prejudice . . . Defendants by requiring them to develop an unnecessary defense."); *In re Stoecker*, 131 B.R. 979, 982 (Bankr. N.D. Ill. 1991) (striking irrelevant material that would "complicate and impede the progress of pretrial discovery.").

The allegations in the Complaint here about the supposed inferior value of pre-paid credit cards are irrelevant and immaterial to the claims they themselves are seeking to pursue.  These allegations are also disproved by the exhibits to the Complaint itself, which establish that if a T-Mobile consumer would rather have cash than a pre-paid credit card, that consumer "can receive cash for the amount of your rebate card balance from any VISA member bank, just look for branches displaying the VISA logo."  Complaint, Ex. B.  In this respect, the pre-paid credit cards are exchangeable for cash even more readily than a rebate check, which generally could not be

cashed at banks where the consumer did not have an account.  In any event, Messrs. Rocke and

Cino, having never received a pre-paid credit card for their rebate, lack standing to complain

about the efficacy of rebate cards received by others.  Neither are allegations about those who

never redeem rebates material to the claims of Messrs. Rocke and Cino, who allege that they did

redeem their T-Mobile rebate.  *Cf. Miller v. Motorola, Inc.*, 76 F.R.D. 516, 518 (N.D. Ill. 1977)

(plaintiff promoted despite her gender, though discriminated against in other ways, lacked

standing to represent a class of plaintiffs who were denied promotions because of their gender).

Were this Complaint otherwise sustainable, allowing these allegations to remain would prejudice

T-Mobile in that T-Mobile would be forced to engage in discovery and preparation of legal

issues which, on the face of the pleadings, are immaterial to the named plaintiffs' claims and to

the class, which as it stands is limited to those whose rebates were "improperly denied" and that,

like Messrs. Rocke and Cino, would accordingly have attempted to redeem their rebate but who

did not receive it, by pre-paid credit card or otherwise.[6]

## CONCLUSION

The Complaint in this case is brought by named plaintiffs whose own claims are time-

barred and who fail to allege any of the requisites of fraud as to themselves.  They invoke federal

court jurisdiction by purporting to sue for an improperly defined class with a pleading that

largely concerns matters irrelevant to both the named plaintiffs and the putative class.  Such a

Complaint cannot, as a matter of law, be sustained, which is why T-Mobile moves for this

---

[6]     A copy of the Complaint highlighting all of the allegations that T-Mobile seeks to strike as immaterial is attached as Exhibit A to this Motion.  This includes allegations concerning the percentage of rebates for which are not redeemed.  *See* Complaint, ¶¶ 10, 23 & 34.  As discussed, the issue according to this Complaint is not unredeemed rebates, but rather rebates that were redeemed, but were not paid (allegedly improperly).

Complaint to be dismissed with prejudice or, alternatively, for the Court to strike the immaterial allegations contained in it, including the class allegations.

Respectfully submitted,

**T-MOBILE USA, INC.**

By:    __s/ Robert M. Andalman_____
                One of its attorneys

Robert M. Andalman (Atty. No. 06209454)
Thomas P. Jirgal (Atty. No. 06291661)
Emily R. Haus (Atty. No. 068289699)
Loeb & Loeb LLP
321 N. Clark Street; Suite 2300
Chicago, Illinois  60610
Telephone:  312-464-3100
Fax:  312-464-3111
Attorneys for T-Mobile USA, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, Robert M. Andalman, hereby certify that on September 3, 2008 I caused to be electronically filed the foregoing **T-Mobile USA, Inc.'s Memorandum In Support Of Motion To Dismiss And To Strike**, which will be served electronically on all registered parties of record.

In addition, I served the following non-registered party by U.S. mail, proper postage prepaid:

> Robert J. Kelter
> Attorney at Law
> 3160 N. Lincoln Avenue
> Suite 505
> Chicago, IL 60657

_____/s/ Robert M. Andalman_____

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**LORING ROCKE and MICHAEL CINO,**
**Plaintiffs,**

v.

**T-MOBILE USA, INC. and**
**YOUNG AMERICA CORPORATION,**
**Defendants.**

Case Number_____
Plaintiffs demand trial by jury.
FILED: JULY 3, 2008
08CV3828
JUDGE GUZMAN
MAGISTRATE JUDGE COX
AEE

## CLASS ACTION COMPLAINT

NOW COME LORING ROCKE and MICHAEL CINO ("Plaintiffs") by and

through their attorneys, Gold & Coulson, a partnership of professional and limited

liability corporations, and Robert Kelter, complaining against T-MOBILE USA, INC.

("T-Mobile") and YOUNG AMERICA CORPORATION ("Young America") allege,

based on personal knowledge with respect to themselves and their own acts and on

information and belief, in part through investigation of counsel, as follows:

### NATURE OF CASE

1.     This is a consumer class action based on deceptive and misleading advertising

practices relating to the rebate programs and practices ("REBATE PROGRAM") of T-

Mobile and Young America directed at Illinois citizens.  Plaintiffs bring this action for

violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815

ILCS 505/1 *et seq.* (The "CFA") and for unjust enrichment.

2.     Specifically, the REBATE PROGRAM offered by T-Mobile and processed by

Young America represents that customers can quickly and easily receive a rebate after

purchasing cellular phones and service.  In reality customers are improperly denied their

rebates, or instead of receiving cash or a check, receive a VISA rebate card with numerous use restrictions attached, making their value less than that of cash.

3.      T-Mobile falsely, deceptively, and knowingly markets to its customers its REBATE PROGRAM and uniformly states to customers, in writing and in stores, that its REBATE PROGRAM lowers the cash prices of cellular phones and service. T-Mobile advertises its REBATE PROGRAM in newspapers, by mail, on the internet, on television, and by displaying rebate offers in retail stores. T-Mobile does not advertise the use of the rebate card, or that rebates are not distributed in cash. The clear intent of T-Mobile is to create the impression that the rebate will in fact be in cash or by check. Attached as Ex. A is one example of a rebate-eligible phone available for purchase on T-Mobile's website. The advertisement only mentions a "mail-in rebate." No mention of the VISA rebate card, or a non-cash or check rebate is made in the offer for sale. Only after purchase is solicited and a service contract (with a costly cancellation fee) is obtained, do customers find out their rebate will not be in cash or by check.

4.      T-Mobile's subsequent rebate form (attached as Ex. B; available for download *after* the purchase of the phone) is similarly misleading. The VISA logo appears in a size smaller than the T-Mobile logo. The terms and conditions are also in fine print.

5.      The VISA rebate cards that T-Mobile uses to fulfill rebates are highly use-restricted and inferior to cash. The VISA rebate cards come with numerous terms and conditions (See Ex. B attached); cash does not. These terms and conditions include, but are not limited to:

        a.  VISA rebate cards cannot be used to pay a T-Mobile monthly bill;

2

b.  VISA rebate cards can only be used if the cellular phone has been used and the account is active. A check or cash does not have these limitations. They are available upon deposit;

c.  VISA rebate cards are not accepted at all locations. Use of VISA rebate cards is limited to those merchants who accept VISA and VISA rebate cards. Cash, of course, may be used anywhere;

d.  VISA rebate cards can incur service charges imposed by merchants. These charges reduce the value of the VISA rebate card. The use of cash does not lead to service charges;

e.  VISA rebate cards expire. Cash never expires;

f.  Unlike cash, VISA rebate cards are not transferable;

g.  VISA rebate cards can not be used in transactions that exceed the balance on the card; they will be declined. If the customer wishes to use the VISA rebate card for a transaction that exceeds the value on the card and pay the difference in cash, the card will be declined. A customer must notify the merchant of the exact balance, and have the transaction processed in two steps. Cash does not have this limitation;

h.  VISA rebate cards do not earn interest. They can not be deposited into interest-bearing accounts like cash. T-Mobile, on the other hand, can utilize the rebate funds and collect interest, up to the time the customer makes a purchase using the rebate card;

i.  VISA rebate cards are not divisible, like cash. A customer can not turn a $50 rebate card into ten $5 rebate cards, for example;

3

> j.   VISA rebate cards collect private information regarding transactions,
> which T-Mobile can then share with employees, attorneys, affiliates,
> service providers, and auditors.

6.    T-Mobile falsely, deceptively, and knowingly tells customers that they will
receive their rebates in as little as 8 weeks (See Ex. B attached).  In actuality rebates take
much longer, if ever received at all.

7.    The REBATE PROGRAM misrepresents that cellular phones and service are
being sold at a discounted price, yet promised rebates are uniformly denied through an
intentional scheme of delay and difficulty through T-Mobile's rebate administrator,
Young America.  Young America, rather than being a true rebate administrator, takes on
the role of rebate gatekeeper: limiting rebate payouts thus saving T-Mobile significant
amount of money.  Moreover, in those rare situations where a rebate is granted, it comes
in the form of a highly use-restricted VISA rebate card.  The result: rather than receiving
a "free" phone after "rebate," the consumer pays full price.

8.    The REBATE PROGRAM is neither simple nor user-friendly.  Rebates are
improperly refused for alleged incomplete paperwork, untimely filing, and other red-tape
issues.  By design, consumers must navigate an impossible web of obstacles to receive a
rebate.  By the time consumers discover a rebate is refused, and if they decide to cancel
the service contract, a hefty fee sanction is assessed.  Likewise, T-Mobile products can
not be returned once rebate forms are submitted.

9.    On information and belief, Young America employs a script that serves to delay
rebate-processing.  The effect of this delay is that customers miss a hidden rebate-
redemption deadline set forth by T-Mobile.

10.    T-Mobile markets the REBATE PROGRAM as reducing the cost of cellular

phones and service by the dollar amount of the rebate.  This marketing scheme is

intentionally misleading because T-Mobile knows that not all customers will receive a

rebate.  A March 4, 2006 *New York Times* article (See Ex. C attached), citing research

conducted by Vericours Inc., reported that about 40 percent of rebate offers are never

redeemed.  T-Mobile is well aware of this "breakage" or "slippage" in the redemption of

rebates.  Companies like T-Mobile and Young America rely on a certain number of

unredeemed rebates when evaluating the economic feasibility of such programs.  T-

Mobile and Young America conspire to profit from this conduct by retaining the

unclaimed money for their own benefit.  It is in their economic interest for rebates to go

unclaimed.  (According to SEC filings, Young America kept $42.9 million in uncashed

rebates between 1995 and 2002; see Fulmer, "Don't get ripped off by rebate 'deal'" at p.

2, attached as Ex. D).

11.    On information and belief, T-Mobile charges contract termination fees in excess

of a reasonable calculation of liquidated damages to cancel service contracts, which

unlawfully penalizes customers.

12.    As to Plaintiff Loring Rocke, he purchased a rebate-eligible T-Mobile cellular

phone and service plan based on T-Mobile's misleading rebate program (See Ex. E

attached).  After numerous attempts, he never received his promised $50 rebate.  Plaintiff

Michael Cino was also deceived into purchasing a rebate-eligible T-Mobile cellular

phone and service plan.  His rebate was declined after an alleged "activation" problem

(See Ex. F attached).  After numerous failed attempts to obtain his promised rebate, he

filed a complaint with the Illinois Attorney General's Consumer Protection Division.  As

a direct result of this complaint, T-Mobile credited Mr. Cino's T-Mobile account for just

over $50 (See Ex. G attached). He never received an actual rebate in the manner

promised by the company.

13.    Plaintiffs are not the only consumers victimized by the REBATE PROGRAM.

Attached as Ex. H are numerous online comments made by consumers that were denied

rebates by T-Mobile and Young America.

14.    Plaintiffs bring this action on behalf of all T-Mobile customers in Illinois who,

within the applicable limitations period, were improperly denied rebates as part of the

REBATE PROGRAM offered by T-Mobile and processed by Young America, as a direct

result of Defendants' fraudulent and deceptive practices.

## PARTIES

15.    Plaintiff, Loring Rocke, resides at 345 West Fullerton Parkway, Apartment 1505,

Chicago, Illinois and is a citizen of the State of Illinois.

16.    Plaintiff, Michael Cino, resides at 320 West Illinois Street, Apartment 2303,

Chicago, Illinois and is a citizen of the State of Illinois.

17.    T-Mobile USA, Inc. is the United States operating entity of T-Mobile

International AG, which is the mobile communications subsidiary of Deutsche Telekom

AG. Its principal executive offices and United States corporate headquarters are at 12920

SE 38th Street, Bellevue, Washington.

18.    Young America Corporation is a Minnesota corporation, with its principal

executive offices and corporate headquarters located at 717 Faxon Road, Young

America, Minnesota.

6

19.     T-Mobile advertises on its website that its services are capable of reaching 268

million Americans (or approximately 90 percent of the United States population). In the

United States, T-Mobile serves 30.8 million mobile communications customers (See Ex. I

attached, T-Mobile press release). As stated in ¶ 12, *supra*, Plaintiffs' individual

damages related to improperly denied rebates were $50 each. As of the 2006 census

estimate, Illinois has a population of 12,831,970; the United States population estimate is

299,398,484 (Source: US Census Bureau website; last visited June 25, 2008). Illinois

makes up approximately 4% of the United States population. If 4% of T-Mobile's United

States mobile communications customers live in Illinois, there are potentially 1,232,000

class members in total. Multiplying $50 by 1,232,000 results in potential class damages

of $61,600,000: well above the jurisdictional amount of the Class Action Fairness Act

### JURISDICTION AND VENUE

20.     Jurisdiction is appropriate in this Court under 28 U.S.C. § 1332 (as amended), the

Class Action Fairness Act and Rule 23 of the Federal Rules of Civil Procedure, as well as

28 U.S.C. § 1332 in that complete diversity between all potential Plaintiffs and

Defendants exists and the amount in controversy exceeds $5,000,000.

21.     Venue is proper in this district in accordance with 735 ILCS 5/2-102 and 735

ILCS 5/2-209. The deceptive practices that are the subject matter of this complaint

occurred within the T-Mobile service area which includes Cook County. Young America

processes rebates for people living in Cook County.

### FACTUAL BACKGROUND

22.     T-Mobile promotes its REBATE PROGRAM to U.S. Customers as a valuable

discount on cellular phones and service.

7

23.    All T-Mobile materials state that the REBATE PROGRAM is an easy and user-friendly way to save money on cellular phones and service.  T-Mobile's customer service representatives that sell the REBATE PROGRAM represent that the program will save them money on cellular phones and service with little trouble or effort on the part of the customer. T-Mobile and Young America know that this is not true based upon the problems customers have trying to obtain their rebate and the amount of customer rebates that are denied, and the high percentage of rebates that go un-redeemed.  Even redeemed rebates are distributed in the form of VISA rebate cards, which are inferior to cash.  Just as in the case of Plaintiffs, Defendants' customers do not end up paying a discounted rate for their cellular phones and service; they pay full price.

24.    Young America provides its customer service representatives with prepared scripts and other written materials aimed at delaying and ultimately causing the denial of customer rebates.

25.    T-Mobile has been very successful in promoting and selling cellular phones and service to its customers using the REBATE PROGRAM.

### CLASS ALLEGATIONS

26.    Pursuant to 28 U.S.C. § 1332 and Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of a class of similarly situated persons injured by T-Mobile and Young America's unfair and deceptive practices.  The class is defined as follows:

> "All consumers in Illinois who were improperly denied rebates by T-Mobile and Young America who were eligible for and participated in the REBATE PROGRAM after July 3, 2005 resulting in costs in excess of the discounted price they would have ultimately paid for their cellular

> phones and service had they received the rebate as
> promised from T-Mobile and Young America."

27.    The Class members are so numerous that joinder of all members is impracticable.

While the exact number of Class members is unknown to Plaintiffs at this time, it is

ascertainable through appropriate discovery.  Plaintiffs believe that thousands, if not

millions, of T-Mobile customers in Illinois have been victimized by T-Mobile and Young

America's unfair and deceptive practices during the relevant period.

28.    Questions of law and fact are common to the Class and these common questions

predominate over any questions affecting individual members.

29.    Plaintiffs will fairly and adequately protect the interest of the Class.

30.    Plaintiffs' counsel are experienced class-action attorneys.

31.    A class-action is an appropriate method for the fair and efficient adjudication of

the dispute.

### COUNT I – CONSUMER FRAUD

32.    Plaintiffs re-allege the allegations set forth above.

33.    Count I is a class-action claim brought under the Illinois Consumer Fraud and

Deceptive Business Practices Act (the "CFA"), 815 ILCS 501 *et seq.*

34.    T-Mobile violated this Act by:

     a.  making written misrepresentations and/or oral misrepresentations that

        induced T-Mobile customers to purchase cellular phones and service using

        the REBATE PROGRAM;

     b.  concealing or failing to disclose material facts that would have caused T-

        Mobile customers eligible for the REBATE PROGRAM to understand

        that T-Mobile and Young America make it exceedingly difficult to obtain

the promised rebate, and that a high percentage of rebates go un-
redeemed;

    c.   concealing or failing to disclose material facts that would have caused T-
Mobile customers eligible for the REBATE PROGRAM to understand
that T-Mobile does not offer rebates in the form of cash or check, but in
the form of a highly use-restricted VISA rebate card that is inferior to cash
or a check.

35.    Because of the unconscionable practices of T-Mobile and Young America set
forth above, Plaintiffs and the Class are entitled to actual damages, in accordance with the
cited statute, as T-Mobile and Young America unnecessarily caused customers' promised
rebates to be improperly denied or distributed in a means inferior to cash.

36.    T-Mobile and Young America's deceptive, misleading, unfair or unconscionable
practices set forth above were done willfully, wantonly, and maliciously entitling
Plaintiffs and the Class to a punitive damage award.

## COUNT II – UNJUST ENRICHMENT

37.    Plaintiffs re-allege paragraphs 1 through 36 above as if fully set forth herein and
further state:

38.    T-Mobile has charged and received (and continues to charge and receive) from T-
Mobile customers an inflated price for cellular phones and service that is based upon a
false misrepresentation that all eligible T-Mobile customers would later be provided with
a quick and easy discount in the form of a rebate.

39.    It is inequitable for T-Mobile and Young America to retain the charges it has
received and continues to receive from Class members as a result of its willful and

fraudulent conduct by improperly denying promised rebates. T-Mobile and Young

America's retention of such funds constitutes unjust enrichment under Illinois law.

40.      T-Mobile and Young America's unjust enrichment at the expense of customers

caused damage to Plaintiffs and Class members and a constructive trust on the monies

wrongly taken should be imposed upon T-Mobile and Young America.

WHEREFORE, Plaintiffs pray that the Court:

a. Enter judgment against T-Mobile and Young America for Plaintiffs and

the Class in an amount equal to the total that T-Mobile and Young

America have improperly denied in promised rebates;

b. Assess punitive damages against T-Mobile and Young America;

c. Award Plaintiffs and the Class reasonable costs and attorney fees;

d. Grant such additional relief as the Court finds proper and just.

Respectfully submitted,

By: ____s/ Arthur S. Gold_____
                    one of their counsel

GOLD & COULSON
A Partnership of Professional
and Limited Liability Corporations
11 S. LaSalle Street, Suite 2402
Chicago, IL 60603
(312) 372-0777
(312) 372-0778 (facsimile)

Robert Kelter
Attorney at Law
3160 N. Lincoln Avenue
#505
Chicago, IL 60657
(773) 528-5660